**UNITED STATES of America,
Plaintiff,**

v.

**Ellen BEARD et al., Defendants.**

**No. 4–70 Cr. 103.**

United States District Court,
D. Minnesota,
Fourth Division.

May 28, 1970.

Robert G. Renner, U. S. Atty., Minneapolis, Minn., for plaintiff.

Kenneth Tilsen, St. Paul, Minn., Larry B. Leventhal, Dag W. Grudem, Robert Ahl, John Stout, Minneapolis, Minn., for defendants.

NEVILLE, District Judge.

■ Some 86 college students plus two faculty members from St. Olaf College and from Carlton College, both located in Northfield, Minnesota, a city approximately 40 miles south of Minneapolis, are charged by an information filed by the United States Attorney with having on May 7, 1970 violated the rules and regulations promulgated by the Administrator of the General Services Administration of the United States "by obstructing the usual use of entrances and corridors, by disturbing the public employees in the performance of their duties, and by im-

peding or disturbing the general public from obtaining the administrative services * * * " in and of the Old United States Post Office, now known as the Federal Office Building, in violation of 40 U.S.C. § 318a. The information charges an offense classified as a petty offense, since the maximum penalty provided under 40 U.S.C. § 318c is 30 days in jail and a fine of $50 or both. Originally upon the filing of a complaint signed by the United States Marshal the Chief Judge of this Court entered an order referring the case for trial to the Honorable Bernard G. Zimpfer, the United States Commissioner located and sitting in Minneapolis, Minnesota. At the scheduled hearing thereon, defendants appeared in person and were represented by five different counsel. One defendant pled guilty, the case was dismissed as to another, apparently an unwitting bystander, but the 86 remaining defendants all refused to consent to a trial before the commissioner, as is their right under 18 U.S.C. § 3401(b), and demanded a trial before the United States District Court. The one defendant who pled guilty has not yet been sentenced. 18 U.S.C. § 3401 was amended in 1968 to provide for trials by a magistrate rather than a commissioner, but this act as yet has not been implemented nor been put into effect for the District of Minnesota. In the court's opinion this case continues to be governed by the Act of October 9, 1940 as then embodied in 18 U.S.C. §§ 3401 and 3402 relating to "petty offenses".

The 86 defendants now move the court (1) for a jury trial, (2) for an order permitting counsel to appear for the defendants without requiring their personal appearance in court, and (3) for an order modifying the present personal recognizance bonds which each of defendants has posted insofar as the same requires that the defendants not leave the State of Minnesota. A substantial number, perhaps 50% of the defendants come as college students from outside of the State of Minnesota and since the school term ends early in June, it is stated that they plan in normal course to leave and return to their homes or at least to depart from the State of Minnesota.

Though the court has heard no evidence, it appears from the statements of counsel at the hearing that one or more busloads of the student defendants and the two faculty members came from Northfield, Minnesota to Minneapolis, intent on protesting and making known their disapproval of the decision of the United States Government to extend the current Viet Nam military operations into Cambodia. They are charged with having chosen the method of a "sit-in" on the steps of the Federal Office Building apparently to impress their views on the public and to attract attention to the sincerity of their beliefs.

The law seems quite clear that having been charged with a petty offense which is not a crime within the meaning of the United States Constitution, Art. III Sec. 2, defendants are not constitutionally entitled to a jury trial. Schick v. United States, 195 U.S. 65, 24 S.Ct. 826, 49 L.Ed. 99 (1904); Duncan v. Louisiana, 391 U.S. 145, 194, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966); Frank v. United States, 395 U.S. 147, 89 S.Ct. 1503, 22 L.Ed.2d 162 (1969). Defendants in effect concede this, but urge that Congress has not legislated for or against a jury trial on petty offenses, and that in the absence thereof the right to a jury trial should still obtain. At least three lower federal courts and one Circuit Court of Appeals have subscribed to the defendants' view or have reasoned that as a discretionary matter a defendant in a petty offense charge should be granted a trial by jury. United States v. Martinelli, 240 F.Supp. 365 (N.D.Cal.1965); United States v. Bishop, 261 F.Supp. 969 (N.D.Cal.1966); Smith v. United States, 128 F.2d 990 (5th Cir. 1942); United States v. Great Eastern Lines, Inc., 89 F.Supp. 839 (D.C.Va.1950).

■ Since defendants have no constitutional right to a jury trial, and since

Congress has not spoken on the subject, it would appear that the granting of a jury trial rests within the court's discretion. On this premise it then follows that in exercising its discretion the court may in the interest of the orderly administration of justice and because of the practical problems confronting the court in a case with 86 defendants, attach certain conditions to the granting of such a jury trial, to which if the defendants desire such a jury trial they must agree.

None of the cases cited by defendants involved mass trials. Each involved only one defendant. The court here is confronted with 86 defendants, some of whom conceivably could claim as a defense absence from the scene, alibi, failure to be identified, non participation, obedience to the United States Marshal's orders to remove themselves, coercion, entrapment, lack of knowledge as to what was occurring, or such technical defenses as illegal arrest, unlawful search, or other individual or personal defenses. It seems to the court that to expect a jury in a mass trial to separate 86 defendants and to remember which may have had individual and separate defenses and what they are is a Gargantuan task and purely as an administrative matter would not be feasible nor accomplish justice. The only way an effective jury trial can be had, it seems to the court, is that all defendants must agree to "stand or fall together." If there are to be 86, or any substantial number of individual defenses of the type above referred to or of any type differing from the general defenses common to all 86 defendants, then the court does not intend to grant a jury trial. Accordingly, prerequisites to the granting of a jury trial are hereby propounded and,

It is ordered that defendants shall have a jury trial, but only on the following conditions:

1. All defendants shall stand trial together and not request a severance. If in the court's opinion only a minimal or insubstantial number claim some personal or individual defense and justice would seem so to dictate, the court reserves the right to order a separate trial or trials as to such few, but if a substantial number wish a severance or desire to assert individual defenses, then the court will not grant a jury trial.

2. All 86 defendants shall admit presence at the scene, their arrest and that they did participate in the actions charged in the information, without of course thereby admitting the commission of a federal punishable offense.

3. No individual or personal defenses, examples of which are set forth hereinabove, shall be asserted.

4. A panel of 28 jurors shall be examined by the court on voir dire (with substitute jurors drawn for any discharged for cause) and the 86 defendants between them shall have but 10 strikes and no more and the government 6 in the usual manner as provided in Rule 6 of the Local Rules for the United States District Court of Minnesota (1970).

5. Defendants jointly and the government each shall have not to exceed 30 minutes for opening statements and one hour and 15 minutes for final argument, which as to the defendants is to be divided between their five counsel as they may determine.

6. Only one defense counsel shall be permitted to cross examine each government witness and must do so on behalf of all defendants.

7. Taking defense counsel at their word based on their statement made at the hearing on the motion, at the trial not more than 4 individual defendants will be permitted, with time therefor to be limited reasonably by the court, to be heard and to speak for all defendants in support of the contention which they apparently intend to urge that normal channels for petitioning the government and for making known their views have become or became so heavily clogged, impeded or closed that they could express themselves and exercise their First Amendment right of freedom of speech and expression in no way other than to

proceed as they did. The court is willing to accord the defendants the opportunity to assert this defense, reserving however the final right to determine (without deciding now) the question as to whether such a defense is in reality a fact issue for the jury as distinguished from a question of law for the court. The court thus does not necessarily at this time determine before hearing the evidence, whether to submit to the jury all issues that possibly may be raised by the defendants, nor the content of instructions to be given to the jury.

The court in no way intends to restrict defendants as to their rights if they elect a trial before the court without a jury and in such event the above conditions relating to standing or falling together clearly will not apply. No defendant need agree to the conditions herein if he or she feels it is improvident or violative of his or her rights. Agreement must be entirely voluntary and should not be entered into if a defendant in good faith believes he has a valid individual defense. If however the defendants, or any substantial number of them, are unwilling to proceed under the terms and conditions above, then the court will not accord the defendants a jury trial. Practical administration of justice dictates this course.

Defendants' counsel are directed to file on behalf of their clients with the clerk of this court and notify the court and government thereof on or before 5:00 P.M. on June 4, 1970 the form set forth hereinbelow or assure the court and counsel that the same will be consented to and filed at or before trial date. Upon failure to do so, trial will be had to the court without a jury. In sum, the court believes that since defendants are not entitled to a jury trial as of right and the court in exercising its discretion to grant such has the power to specify the above conditions to prevent 86 or a substantial number of personal defenses which can result only in chaos and almost certainly a miscarriage of justice. Trial to the court certainly will reduce if not eliminate such problems.

Each of the defendants, if he consents to a jury trial on conditions hereinabove, shall sign a counterpart of the following statement to be prepared and signature procured by defense counsel:

"I am one of the defendants named in United States of America v. Ellen Beard, et al, No. 4-70 CR. 103. I intend to plead, or have pled, not guilty to the charge contained in the Information filed by the United States Attorney. I have read the court's order of May 28, 1970. I understand it and agree to the conditions therein contained and request a jury trial subject to the restrictions and conditions therein set out. This shall in no way however be deemed a waiver of any privilege against self-incrimination I may have under the Fifth Amendment to the United States Constitution.

In the event for good cause shown I am unable to be present at the trial or other proceedings in the above case, I authorize my attorney _____ to appear for me and in my stead and I agree to be tried for the petty offense charged in absentia, and to be bound by action of my counsel in any proceedings.

Dated: _____

The United States Attorney stated at the hearing as to defendants' motion to modify the 86 personal recognizance bonds to permit absence from the State of Minnesota, that the government had no objection to the making of such an order and accordingly such motion is granted.

The court hereby sets a trial date for all defendants for 9:30 A.M. in the United States Courthouse, 110 South 4th Street, Minneapolis, Minnesota, in Court Room No. 3 for June 8, 1970, whether or not a jury is employed, and all defendants are expected and required to be present at that time to be arraigned and to proceed to trial; provided that any defendants who for reasons of illness or upon making a showing of other good

cause beyond his or her reasonable control, and if he or she has signed the within prescribed form, may appear by counsel and be tried in absentia with the same force and effect as though appearing personally and it is so ordered and defendants' motion to this effect is hereby granted.

The trial will continue until noon on June 8th, and then adjourn to and resume and continue all day June 9th and June 10th if such time is needed.

The reason for the court's requirement of notice from defense counsel before 5:00 P.M. on Thursday, June 4th is so that a sufficient number of jurors may be called and be notified on Friday, June 5th so as to be on hand for Monday morning June 8th if a jury trial is to be had, since the court's normal spring jury term has been substantially completed.

If the trial is to be by jury, counsel both for the defense and for the government are requested on or before Monday, June 8, 1970 prior to the opening of the trial to furnish the court with:

(1) any voir dire questions desired to be used in empanelling the jury;

(2) requested or proposed instructions to the jury;

(3) any memorandum of law thought to be controlling, particularly relating to the question of the degree of the burden of proof in a petty offense trial, applicability of the Federal Rules of Criminal Procedure to such a trial and any other legal questions which may be deemed pertinent.

*Note:*

All defendants but two signed and filed the waiver form specified above and elected to stand trial before a jury which after a two and a half day trial, returned a verdict of guilty. The court subsequently imposed on each a sentence of a $35.00 fine or a term of five days in confinement in the custody of the Attorney General. A number of defendants chose to serve the prison sentence.